**STATE**

v.

**Rafael MERCADO.**

No. 92–65–C.A.

Supreme Court of Rhode Island.

Dec. 3, 1993.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen., Andrew Berg, Sp. Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Barbara Hurst, Chief Appellate Atty., Paula Rosin, Asst. Public Defender, for defendant.

## OPINION

WEISBERGER, Judge.

This case comes before us on the appeal of the defendant, Rafael Mercado, from a judgment of conviction of possession of a controlled substance with intent to deliver entered in the Superior Court after a trial by jury. We affirm the conviction. The facts pertinent to the defendant's appeal are as follows.

On September 13, 1988, at approximately 3:25 p.m., Trooper John Blessing observed a light-brown Oldsmobile, which appeared to be speeding, traveling on Route 95 North with two occupants. Clocking the vehicle at sixty miles per hour on his radar gun, Trooper Blessing directed the driver to pull the vehicle over.

As Trooper Blessing approached the vehicle, he noticed its New York license plates. Proceeding to the driver's window, Trooper Blessing requested the driver's license and registration. The driver, Raquel Cintron (Cintron), produced her Rhode Island driver's license, which Trooper Blessing examined, but she was unable to produce the vehicle's registration. Cintron did, however, produce a New Jersey certificate of title that showed Susan Ortiz (Ortiz) of 64 Watson Street, Central Falls, Rhode Island, as the owner of the vehicle. Trooper Blessing noticed that Ortiz's address was the same as that of Cintron. After reviewing both documents, Trooper Blessing asked defendant, who was the passenger in the vehicle, for some identification. The defendant indicated that although he did not have any identification with him, his name was Osirus Mercado and gave a date of birth. At that point Trooper Blessing asked where Cintron and defendant were heading. The defendant stated that they were heading to Providence, Rhode Island from New York City, New York.

Trooper Blessing had become suspicious because the occupants were from Rhode Island, the license plates were from New York, title had been issued in New Jersey, no registration was produced, and defendant had no identification. Computer checking the names of Raquel Cintron and Osirus Mercado, Trooper Blessing did not find any outstanding arrest warrants. Suspecting that the car might be stolen, Trooper Blessing attempted to check the New York license plate, but the computers storing such information were not operating at that time.

Trooper Blessing issued a speeding ticket to Cintron, and, still concerned with the lack of registration documents, he asked Cintron and defendant who owned the vehicle. Both Cintron and defendant stated that a friend of Cintron's owned the vehicle, but neither would reveal the name of that friend. Trooper Blessing found that suspicious since the New Jersey certificate of title indicated that the owner lived at the same address as Cintron.

With the consent of Cintron, Trooper Blessing searched the vehicle and found in the glove compartment a beeper and an electronic latch for the trunk. Trooper Blessing discovered the trunk latch had been disabled and was inoperable. When asked by Trooper Blessing to open the trunk, Cintron took the ignition key, which was not on a key ring and was the only key she had, and unsuccess-

fully attempted to open the trunk. The inoperable trunk latch, beeper and single key further aroused Trooper Blessing's suspicions. Concerned with the registration and identity of defendant, Trooper Blessing ordered defendant to ride in the cruiser with him back to the police barracks and Cintron to follow in the Oldsmobile.

At the barracks, in the course of a conversation with a fellow officer who knew Osirus Mercado, Trooper Blessing was told that although defendant closely resembled Osirus, defendant was not Osirus. Confronted with this information, defendant admitted that his name was Rafael Mercado, not Osirus Mercado.

Checking the name Rafael Mercado, Trooper Blessing discovered an outstanding arrest warrant. Trooper Blessing also discovered that defendant lived at the same address as Cintron and Ortiz, the owner of the vehicle. The defendant was arrested and taken to a holding room where he was questioned in more detail. Trooper Blessing again asked defendant about the origin and ownership of the vehicle. Admitting that Cintron was his girlfriend, defendant claimed that they had driven his mother's car from Rhode Island to New York earlier in the day. He claimed that they had dropped off his mother's car in New York and returned to Rhode Island in the Oldsmobile. Trooper Blessing also questioned Cintron about the origin and ownership of the car and asked her for additional identification. As Cintron reached into her purse, Trooper Blessing noticed a parking pass issued at 8:57 a.m. that same day for a parking lot at T.F. Green Airport in Warwick, Rhode Island.

After his conversations with defendant and Cintron, Trooper Blessing's suspicions were raised further, and he decided to make an exterior examination of the Oldsmobile. A dog trained in drug detection conducted a sniff test of the vehicle and indicated that narcotics of some sort appeared to be in the vehicle's trunk. A search warrant was im-

mediately sought and granted, and a local garage mechanic was called to open the trunk of the car. Two large cardboard boxes, which contained approximately 25,000 packets of heroin, were discovered in the trunk. Cintron and defendant were charged with possession of a controlled substance with intent to deliver.

At the close of the state's case against defendant,[1] he moved for judgment of acquittal. The trial justice denied the motion. After the jury returned a verdict of guilty of possession of a controlled substance with intent to deliver, defendant moved for a new trial on the grounds that the verdict was against the law, the evidence, and the law and evidence. The trial justice also denied this motion. The defendant filed a timely notice of appeal.

■ In his brief defendant asserts two issues in support of his appeal. He bases both issues upon a challenge to the sufficiency of the evidence, claiming that the state failed to prove beyond a reasonable doubt that defendant had constructively possessed heroin with an intent to deliver.[2] As we explained in *State v. Collazo*, 446 A.2d 1006 (R.I.1982), a challenge to the sufficiency of the evidence is properly framed in terms of a challenge to the trial justice's denial of the defendant's motions for judgment of acquittal and new trial. *Id.* at 1011–12; *accord State v. Henshaw*, 557 A.2d 1204, 1206–07 (R.I. 1989). Therefore, we shall analyze defendant's appeal in the context of the trial justice's denial of defendant's motions for judgment of acquittal and new trial.

■ To review properly the denial of these motions, we must keep in mind the principles governing constructive-possession cases. This court has traditionally required two elements to establish constructive possession: (1) a defendant's knowledge of the presence of an item and (2) an intent to exercise control over the item. *See, e.g., State v. Jenison*, 442 A.2d 866, 875 (R.I.1982); *State*

---

1. The trials of defendant and Cintron were severed.

2. The defendant does not challenge the intent-to-deliver element of his conviction. Nor does de-

fendant challenge any aspect of the stop or search of the Oldsmobile or any evidence derived as the fruit thereof.

v. *Motyka,* 111 R.I. 38, 40, 298 A.2d 793, 794 (1973).

■ Constructive possession may be exclusive or joint. *State v. Bennett,* 92 R.I. 316, 323, 168 A.2d 282, 286 (1961). In the case of joint-constructive possession, a defendant's mere presence or association with another who possesses a controlled substance does not, without more, establish joint-constructive possession. *See Jenison,* 442 A.2d at 875–76; *In re Caldarone,* 115 R.I. 316, 325–26, 345 A.2d 871, 876 (1975). A defendant's presence, however, can be a factor, depending on the circumstances of the presence and the other indicia that flow from that presence. *See State v. Gilman,* 110 R.I. 207, 216–18, 291 A.2d 425, 431–32 (1972)(indicia flowing from the defendant's presence at house where he brought another to purchase drugs is one of the circumstances to support finding of constructive possession); *see also In re Caldarone,* 115 R.I. at 325–26, 345 A.2d at 876 (indicia flowing from presence and flight not strong enough to establish constructive possession); *cf. Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245–46 (1979)(no circumstances surrounding the defendant's presence in public place that would give rise to inference that the defendant engaged in illegal activity). In the final analysis joint-constructive possession can be inferred from the totality of the circumstances. *See Jenison,* 442 A.2d at 875; *Gilman,* 110 R.I. at 217–18, 291 A.2d at 431.

## I

### Motion for Judgment of Acquittal

■ We first consider the denial of defendant's motion for judgment of acquittal. In reviewing the denial of such a motion, this court applies the same standard as the trial justice below. *Henshaw,* 557 A.2d at 1206. The standard applied by a trial justice is whether the evidence presented "is capable of generating proof of guilt beyond a reasonable doubt." *State v. Caruolo,* 524 A.2d 575, 581 (R.I.1987). In order to make this determination, the trial justice must view the evidence in the light most favorable to the state, without weighing the evidence or assessing the credibility of the witnesses, and draw therefrom every reasonable inference consistent with guilt. *State v. Johnson,* 116 R.I. 449, 454, 358 A.2d 370, 373 (1976). If the evidence so viewed is such that no reasonable jury could convict the defendant, the trial justice must grant the motion. *State v. Grundy,* 582 A.2d 1166, 1170 (R.I.1990).

■ The defendant argues that the evidence, however viewed in regard to him, does not establish or give rise to an inference that defendant constructively possessed the heroin. In support of his argument he relies heavily upon the so-called mere-presence line of cases.[3]

Viewing the evidence in the light most favorable to the state, the trial justice found that defendant's presence and his statements, the large quantity of heroin discovered, the relationship between defendant and Cintron, their travel itinerary, and the physical evidence as it related to the Oldsmobile collectively gave rise to a strong inference that defendant traveled to New York with his girlfriend in order to assist her in transporting a large shipment of heroin back to Rhode Island. From the totality of the circumstances the trial justice stated that the jury could certainly infer that defendant had constructively possessed the heroin. Accordingly the trial justice concluded that the state had presented sufficient evidence to allow the case to proceed to the jury and denied defendant's motion for judgment of acquittal.

We agree with the trial justice that under a totality-of-the-circumstances test, the evidence and reasonable inferences drawn therefrom were sufficient to prove defendant's constructive possession beyond a reasonable doubt and warranted letting the case proceed to the jury. We base our decision upon the same factors as the trial justice and find that a comprehensive web of strong circumstantial evidence existed to establish defendant's knowledge of the heroin and his intent to control it.

---

3. This line of cases includes *State v. Porto,* 591 A.2d 791 (R.I.1991); *State v. Jenison,* 442 A.2d 866 (R.I.1982); *In re Caldarone,* 115 R.I. 316, 345 A.2d 871 (1975); *State v. DeGregory,* 113 R.I. 434, 322 A.2d 52 (1974).

As for the element of knowledge, defendant was present in a private place, the Oldsmobile, in which a significant amount of heroin had been secreted. It is reasonable to conclude that defendant would not have been allowed in the Oldsmobile as a passenger unless he knew of the valuable cargo contained therein and was conscious of the risks and ramifications involved with transporting that cargo. The reasonable inference flowing from defendant's presence in the Oldsmobile is that he had knowledge of the presence of the heroin. *See Gilman,* 110 R.I. at 217–18, 291 A.2d at 431–32; *cf. Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979)(in contrast, a defendant's presence in a public place would give rise to no such inference).

In addition, when one considers that defendant and the car owner lived at the same address, his professed ignorance of the identity of the car owner gives rise to two alternative inferences, both of which indicate his knowledge of the heroin. Either defendant was lying to conceal the car owner's role in the drug transaction, or the owner did not in fact live at defendant's address and defendant was deliberately ignorant of the owner's true identity in order to insulate himself and the owner. *See United States v. Alvarez,* 837 F.2d 1024, 1028 (11th Cir.1988)("[b]eing flown from the United States to Aruba and offered $1,500 to carry a load of rotten fish to Nassau by a man whose last name is unknown points in the direction of deliberate ignorance"). Both inferences strongly suggest defendant's knowledge of the heroin.

Turning to the element of control, defendant and Cintron knew each other well and lived at the same address. They drove defendant's mother's car to New York to retrieve the Oldsmobile with the heroin, and they made the return trip to Rhode Island that same day together. The defendant also lied about his identity and denied knowing the identity of the car owner. *See State v.*

*Colbert,* 549 A.2d 1021, 1024 (R.I.1988)(the defendant's lie that package was sent by his mother-in-law when the defendant was a bachelor gives rise to inference of the defendant's knowledge of drugs in package). These facts, coupled with an inference of defendant's knowledge of the heroin, give rise to a reasonable inference that defendant played an active role in assisting Cintron to transport the heroin and therefore intended to exercise control over the heroin.

We think that it strains credulity to believe, as defendant urges, that defendant was simply an inadvertent guest who had gone for a ride to New York and returned in an old car in which someone had by coincidence left half a million dollars' worth of heroin. Given its street value, it is unrealistic to think that such a large quantity of heroin could simply be misplaced in a locked trunk. *Cf. State v. Louro,* 589 A.2d 1197, 1199 (R.I. 1991)(110 pounds of marijuana found in rental car).

■ We also reject defendant's contention that he could not have constructively possessed the heroin because he did not drive the vehicle or have any physical control over or access to the locked trunk. The fundamental premise of constructive possession, whether exclusive or joint, is that one lacks direct physical possession of an item. *See Jenison,* 442 A.2d at 875; *see also* George Singer, *Constructive Possession of Controlled Substances: A North Dakota Look at a Nationwide Problem,* 68 N.D. L.Rev. 981, 984–90 (1992)(tracing development of constructive-possession doctrine from colonial times to present). Therefore, the lack of direct access to the trunk is by no means dispositive of the constructive-possession issue.

Furthermore, we reject defendant's contention that the state relied on an impermissible "pyramiding of inferences" to establish its prima facie case.[4] On the basis of our

---

4. In certain cases and under certain conditions, we have prohibited the "pyramiding of inferences," or the drawing of a secondary inference from an initial inference, to establish an element of an offense. *Waldman v. Shipyard Marina, Inc.,* 102 R.I. 366, 373–75, 230 A.2d 841, 845–46 (1967). Our prior decisions indicate that we

have prohibited the drawing of the secondary inference from an initial inference when it has been possible and reasonable to draw more than one initial inference from the underlying established fact. *See In re Derek,* 448 A.2d 765, 768–69 (R.I.1982). In the case at hand defendant challenges inferences drawn from his misidentifi-

discussion above, we conclude that "rather than deducing guilt from an ambiguous circumstantial fact, the state established a pattern of corroborating circumstances." *Caruolo,* 524 A.2d at 582.

We hold that defendant's presence in a private place such as the Oldsmobile, when colored by the surrounding circumstances, gives rise to a compelling inference that defendant knew the heroin was in the trunk and intended to exert control over it. *See id.* Viewing the totality of the circumstances, we are of the opinion that there was sufficient evidence, in light of the direct evidence and the web of circumstantial evidence, for the jury to find that defendant was not an inadvertent guest in the car but rather a conscious joint possessor of the heroin. Accordingly we affirm the trial justice's denial of defendant's motion for judgment of acquittal.

## II

### Motion for New Trial

We next consider defendant's claim that the trial justice improperly denied his motion for a new trial. The defendant contends that the evidence presented was insufficient to prove his guilt beyond a reasonable doubt and that, therefore, the verdict was against the weight of the evidence.

A trial justice may grant the new-trial motion if, relying on his or her independent assessment of the weight and the credibility of the evidence, he or she determines that the verdict is against the preponderance of the evidence. *Henshaw,* 557 A.2d at 1207–08. If, however, a trial justice agrees with the verdict or determines that reasonable minds could fairly come to different conclusions, then the new-trial motion must be denied. *State v. Dame,* 560 A.2d 330, 333 (R.I.1989).

In passing upon a trial justice's ruling on a motion for a new trial, we accord great weight to the trial justice's finding of fact and shall disturb such a finding only if the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong. *Caruolo,* 524 A.2d at 585.

The defendant bears the burden of persuading us of the alleged error committed by the trial justice. *State v. Howard,* 114 R.I. 731, 738, 339 A.2d 259, 263 (1975). The defendant makes only the broad assertion that the state's evidence consisted solely of defendant's presence in the Oldsmobile and no evidence was introduced to prove the elements of knowledge or control. We hold that defendant has not met his burden.

We remind defendant that we do not distinguish between direct and circumstantial evidence. *State v. Rose,* 112 R.I. 402, 407, 311 A.2d 281, 284 (1973)(no valid distinction between probative force of direct and circumstantial evidence). As discussed above, we are of the opinion that there was sufficient evidence along with reasonable inferences flowing therefrom to support a jury's finding of guilt beyond a reasonable doubt. As we have previously demonstrated, this is not a case in which the state's sole evidence was defendant's presence at the crime scene.

We note that in ruling on the defendant's motion, the trial justice thoroughly reviewed the evidence and reasonable inferences drawn therefrom. Concluding that sufficient evidence existed and that his factual findings agreed with those of the jury, the trial justice stated that "if the jury had returned anything but a guilty verdict in this case, it would have been a travesty of justice." We conclude that the trial justice carefully and correctly applied the proper standard in his review of the evidence and in ruling upon the motion for new trial. He did not overlook or misconceive any material evidence, nor was he otherwise clearly wrong.

For the reasons stated, the defendant's appeal is denied and dismissed. The judgment of conviction is affirmed, and the papers of the case are remanded to the Superior Court.

FAY, C.J., did not participate.

cation and the airport parking pass seized from Cintron. Even if inferences drawn from these two facts would not be sufficient by themselves, the state did not base its case, as it did in *In re* *Derek,* exclusively upon these inferences. Rather the state has presented a mosaic of circumstantial evidence that considered as a whole constitutes proof beyond a reasonable doubt.