**STATE**

v.

**Firlando RIVERA.**

No. 2001–13–C.A..

Supreme Court of Rhode Island.

Nov. 19, 2003.

Catherine A. Gibran, Esq., Providence, for Plaintiff.

Marcy Coleman, Esq., for Defendant.

Before WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY and SUTTELL, JJ.

## OPINION

FLAHERTY, Justice.

This case comes before us on the appeal of the defendant, Firlando Rivera (Rivera or defendant), from a judgment of conviction entered in the Superior Court pursuant to a jury verdict finding him guilty of

first-degree murder and three firearm charges.[1] After the jury rendered its verdict, the defendant made a motion for a new trial, which was denied after hearing. The trial justice sentenced the defendant to a mandatory sentence of life imprisonment for murder, and a ten year suspended probationary term and two ten-year jail terms, to run concurrently with the life sentence, for the firearm charges. The defendant was also sentenced to an additional twenty years of non-parolable jail time after the trial justice declared him to be a habitual offender. The defendant raises on appeal the sole argument that the trial justice erred in denying his motion for a new trial. For the reasons set forth herein, we affirm the judgment of the Superior Court. The facts of the case pertinent to this appeal are as follows.

### Facts and Travel

The tragic facts of this case resulted in the extinguishment of one young life and caused another to be irretrievably altered. In the early morning hours of November 23, 1997, the victim, Edward "Chipper" Wilson IV, and his friend Robert K. Rhoads arrived at the Weiner Palace in Woonsocket for a late night bite after an evening out. As they were conversing with two female employees and the owner of the establishment, defendant, nicknamed "Hippy," and three male friends entered the Weiner Palace. Although

some derogatory comments were exchanged between members of each group of men, Wilson and his friend made an uneventful exit from the restaurant and headed back to their parked vehicle. Before he got to the vehicle, however, Wilson noticed defendant staring at him from the front window inside the Weiner Palace. Wilson, who was a martial arts instructor, challenged defendant to come outside. The defendant complied, and the two exchanged profanities and blows, resulting in defendant's being knocked to the pavement. At some point, defendant's friends also became involved in the scuffle. At trial, Rhoads testified that defendant pulled out a metal object and hit Wilson over the head with it. At this point Wilson fled down the hill in a direction away from the Weiner Palace. By several eyewitness accounts, Wilson was pursued by defendant. Shots were fired and Wilson was struck twice, once in the abdomen and once in the head, the wound that proved to be fatal.[2]

Although no eyewitness could testify seeing defendant fire the bullet that killed Wilson, the state presented several witnesses throughout the course of the six-day trial who testified to having seen defendant with a weapon and heading in the direction of where Wilson fled just before Wilson was shot. The two waitresses on shift at the Weiner Palace, Heather Cournoyer and Michelle Oliveira, gave consis-

1. The firearm violations included the commission of a crime of violence while carrying a firearm, carrying a firearm without a license, and possession of a firearm after having been previously convicted of committing a crime of violence. The jury returned a guilty verdict for the murder charge and on the first two firearm charges. With respect to the last firearm charge, judgment automatically was entered against defendant on this charge pursuant to his stipulation that judgment could so enter if the jury returned guilty verdicts on the first three counts.

2. The medical examiner who later conducted an autopsy of the body testified that the first shot struck Wilson's front abdomen to the left of his umbilicus and the second entered through his posterior right scalp just behind the right ear. The point of entry for the second bullet suggested three possible scenarios for the position of Wilson's body when hit, the most likely of which, according to the medical examiner, was that Wilson was on his knees in a downward position with his head inclined.

tent testimony about the events that unfolded that evening. Each testified that, from their vantage point inside the Weiner Palace, they had seen defendant pull out a gun, cock it, and walk in the direction of the victim. Each then heard what sounded like a thud and then a gunshot ring out in rapid succession. John Muniz, one of defendant's friends involved in the fight, told police that he saw defendant in possession of a gun and that he saw him pull it back and cock it as the victim fled. However, Muniz later recanted this version of events while testifying for the state. At trial he said that defendant had never had a gun and that it was only upon threats by police that he placed a gun in defendant's hands. Rhoads, Wilson's friend, testified that he saw defendant pointing a gun at Wilson, heard a gunshot and saw his friend fall. Rhoads heard a second gunshot while running away. Michael Cote, a customer at the Weiner Palace, testified that although he never saw a weapon in defendant's hands, defendant was involved in a confrontation with Wilson, and that he heard a scuffle outside the restaurant, followed by two gunshots about fifteen seconds apart.

Evidence was presented at trial that positive identifications of defendant were made using a series of photo packs shown to witnesses not more than a day after the shooting. Cournoyer, Oliveira, and Rhoads all selected defendant's photo from one of several photo packs. At trial almost two years after the incident, only Oliveira, among these three witnesses, was able to make a positive in-court identification of defendant. However, other witnesses, including three of his friends, were able to identify defendant at trial as the same man referred to as "Hippy." Rhoads and Cournoyer did not recognize defendant as the same man they had seen that night. All three witnesses, however, did testify that they were confident in their selection of defendant's photo at the time following the incident and that the man in the photo was the assailant. Furthermore, Cournoyer and three police sergeants involved in the case testified that defendant looked significantly different at trial than he did at the time of the crime. These physical changes included a gain in weight, a haircut, shave of facial hair, and the addition of glasses.

In additional to the abovementioned witnesses, the state presented additional evidence of suspicious behavior by defendant in the hours following the murder. Wanda Vasquez, a friend of defendant, testified that defendant asked her on the morning after the murder to care for a dog in his care because he had to go out. Hector Rodriguez, another friend, testified that he gave defendant a ride to Providence later that day so that defendant could "get out of Woonsocket." Finally, evidence was presented to establish that Maribel Albino, the sister of defendant's then-girlfriend, told police that on the evening after the murder, defendant told her he had been in a fight with a white man and that he spoke of going to a hotel. However, she recanted this story on the stand.

In his appeal, defendant contends that the trial justice was clearly wrong to deny his motion for a new trial because the verdicts were against the weight of the evidence and failed to do substantial justice. He urges that there was insufficient evidence to establish beyond a reasonable doubt that he was the person who murdered Wilson. The defendant offers three arguments in support of this assertion. First, he faults the identification procedures the police used to implicate him as the shooter. Concerning the out-of-court identifications, defendant argues that witnesses selected him as the perpetrator from a series of photo packs of questiona-

ble neutrality [3] and that, much to his detriment, a live lineup was never conducted. Regarding in-court identifications, defendant argues that there was insufficient identification evidence on which to rely for a murder conviction. Of the eyewitnesses that originally picked him out of a photo pack, defendant argues, only Oliveira affirmatively identified him at trial.[4] Furthermore, defendant argues that the physical descriptions eyewitnesses gave the police just after the incident did not accurately or consistently describe his actual height and weight or the clothing that he wore that night.

The defendant's second argument is that the credible evidence did not establish the crime of first-degree murder. He alleges that the state failed to prove beyond a reasonable doubt that he intended to kill the victim and that he acted with malice aforethought, premeditation, and deliberation. He further contends that the testimony was inconclusive as to the number of shots fired, and that the two shots that were fired went off in rapid succession, with no time for reflection or intent to kill.

Lastly, defendant argues for the first time to this Court that the position of Wilson's body and the entry wounds from the bullets, as the medical examiner testified to at trial, were not consistent with testimony about the relative positions of Wilson and defendant just before the shooting. This, he asserts, should exonerate him as the murderer. The defendant suggests that it was highly improbable that the shooter could have inflicted wounds to the victim's front while pursuing him from behind.

We limit our discussion to defendant's first two contentions regarding the paucity of evidence to identify defendant as the killer or to prove that the crime rose to the level of murder in the first degree. We decline to address defendant's argument about the position of the victim or the location of the entry wounds as grounds for exoneration. The state correctly contends that defendant failed to raise this issue as a basis for new trial in the Superior Court. Therefore, in accordance with our well-established rule, it cannot be raised for the first time on appeal. *State v. Kilburn,* 809 A.2d 476, 479 (R.I.2002) (per curiam) (citing *State v. Breen,* 767 A.2d 50, 57 (R.I.2001)). Moreover, because defendant did not identify any of the narrow exceptions to the raise-or-waive rule,[5] he is now precluded from relying on this argument on appeal.

3. The defendant questions the out-of-court identifications made by waitresses Oliveira and Cournoyer because each selected defendant as the shooter within five minutes of each other at the home that they shared on the very day in which defendant's photo had been released to the media. Notwithstanding, defendant acknowledges that it was never established whether either woman had seen the photo before making her selection. A police sergeant who showed the photo pack to the women testified that they were separated when each identified defendant.

4. Cournoyer, Oliveira, and Rhoads all selected defendant from a series of photo packs shown to them just after the incident. After almost two years had passed, only Oliveira positively identified defendant at trial.

Rhoads said that he "did not see [defendant]" in the courtroom when asked, and Cournoyer said that she "didn't recognize him in the courtroom," and "[i]f it's [defendant] he looks really different." She indicated that he was skinnier, had a beard, and no glasses on the night in question. Cournoyer did, however, assert that she was certain that the man she had selected from the photo array was the man that held the weapon in pursuit of Wilson.

5. This Court has acknowledged an exception to the raise-or-waive rule when there exists an issue of constitutional dimension derived from a novel rule of law that could not reasonably have been known to counsel at the time of the proceeding in the Superior Court.

At the hearing on the motion for a new trial, defense counsel never argued the relative position of the victim or the angle of the bullet wounds to support the proposition that the guilty verdict for first-degree murder was against the weight of the evidence and that defendant was physically incapable of inflicting the fatal wound from his position behind the victim. Before this Court at oral argument, defense counsel defended this failure by pointing out that this argument had been raised at trial and that the argument at the hearing on the motion was merely an abbreviated version of what had already been preserved at trial. We reject this contention.

In response to defendant's two remaining arguments, the state posits that it presented proof to the level of beyond a reasonable doubt on all charges submitted to the jury. On the issue of identification of defendant, the state contends that there were multiple eyewitnesses who selected defendant as the suspect from photo packs just after the incident. Although not every eyewitness could verify that the man sitting in the courtroom on trial was indeed the same man they had implicated earlier, the state argues that it presented ample evidence to support a finding that defendant's appearance had changed drastically over the course of two years. On the issue of premeditation, the state argues that the record presents a deliberate and thought-out plan in which defendant pulled out a weapon, struck the victim over the head with it, and then pursued the victim down the hill as he fled. The state contends that defendant's reflection on the plan began the moment that he pulled out a loaded weapon to retaliate for being assaulted by Wilson.

### Motion for a New Trial

 We address defendant's allegations of error fully cognizant that "[a] trial justice may grant [a] new-trial motion if, relying on his or her independent assessment of the weight and the credibility of the evidence, he or she determines that the verdict is against the preponderance of the evidence." *State v. Bleau,* 649 A.2d 215, 219 (R.I.1994) (quoting *State v. Mercado,* 635 A.2d 260, 265 (R.I.1993)); *State v. Henshaw,* 557 A.2d 1204, 1207–08 (R.I. 1989). The new-trial motion must be denied, however, if a trial justice agrees with the verdict or determines that reasonable minds could fairly come to different conclusions. *State v. Dyer,* 813 A.2d 71, 75 (R.I.2003); *State v. Hazard,* 797 A.2d 448, 460 (R.I.2002) (citing *State v. Golembewski,* 791 A.2d 468, 470·(R.I.2002)). ·

 When considering a defendant's motion for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure, the trial justice must articulate the facts upon which his or her ruling relies, *see State v. Medina,* 747 A.2d 448, 449 (R.I.2000); *State v. Caruolo,* 524 A.2d 575, 585 (R.I.1987). Furthermore, the trial justice should set out in some reasonable manner the material factual evidence or the absence thereof, direct or circumstantial,[6] upon which the ruling is based. *State v. Vorgvongsa,* 670 A.2d 1250, 1252 (R.I.1996) (citing *State v. Banach,* 648 A.2d 1363, 1367 (R.I.1994)). As articulated in *Banach,* 648 A.2d at 1367, the trial justice has at least three analyses to perform. First, he or she must consider the

---

*State v. Kilburn,* 809 A.2d 476, 479 (R.I.2002) (per curiam) (citing *Roe v. Gelineau,* 794 A.2d 476, 482 (R.I.2002)). No such exception applies in this case.

6. This Court does not distinguish between direct and circumstantial evidence. *State v. Mercado,* 635 A.2d 260, 265 (R.I.1993) (citing *State v. Rose,* 112 R.I. 402, 407, 311 A.2d 281, 284 (1973)).

evidence in light of the charge to the jury, a charge that presumably is correct and fair to the defendant. Second, he or she must determine his or her own opinion of the evidence, and then weigh the credibility of the witnesses and other evidence and choose which conflicting testimony and evidence to accept and which to reject. Finally, the trial justice must determine whether he or she would have reached a different result from that of the jury based on an individual assessment and in light of the charge to the jury. If at this point the trial justice agrees with the jury's verdict, the analysis is complete and the verdict should be affirmed. *Id.* It is only when the trial justice does not agree with the jury that further analysis must be made. In this fourth analysis, he or she must determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice. If the verdict meets this standard, then a new trial may be granted. However, the motion will be denied if the trial justice determines that the evidence and the reasonable inferences drawn therefrom are so nearly balanced that reasonable individuals could differ. *Id.* at 1367 n. 1 (citing *State v. Girouard*, 561 A.2d 882, 891 (R.I. 1989)).

That said, however, "[t]he trial justice need not analyze all the evidence presented, but should state the motivation for his or her ruling." *Henshaw*, 557 A.2d at 1208. "[A] trial justice, in articulating the rationale for his or her decision to deny a motion for a new trial, need not specifically refer to each speck of trial evidence that might support his or her decision, but need only relate to that evidence, which is sufficient to allow this Court to determine whether the trial justice has undertaken to comply with the applicable standards for his or her decision." *State v. Ramirez*, 786 A.2d 368, 373 (R.I.2001) (quoting *State v. Barrett*, 768 A.2d 929, 946 (R.I.2001)).

In reviewing a trial justice's ruling on a motion for a new trial, this Court will "accord great weight to the factual findings made by the trial justice. We will not disturb those findings, absent our determination from the record that the trial justice, in making his or her findings, has overlooked or misconceived material trial evidence or was otherwise clearly wrong." *Vorgvongsa*, 670 A.2d at 1252 (citing *Mercado*, 635 A.2d at 265 and *Henshaw*, 557 A.2d at 1207). Moreover, the party alleging error on the part of the trial justice has the burden of persuading this Court of any such error. *Vorgvongsa*, 670 A.2d at 1252 (citing *State v. Howard*, 114 R.I. 731, 738, 339 A.2d 259, 263 (1975)).

Upon review of the record in this case, it is apparent that the trial justice did not err in denying defendant's motion for a new trial. He acknowledged that he made his decision upon independently weighing the evidence and considering the testimony and credibility of the witnesses. To that effect, he referred specifically to the facts and testimony upon which he relied. With regard to the identification of defendant, the trial justice said that "[a]s to Oliveira and Cournoyer, they satisfactorily * * * identified this defendant as the culprit with the firearm." Furthermore, the trial justice noted that Rhoads's inability to make an in-court identification in no way diminished or dispelled his earlier out-of-court identification using a photo pack in which he picked out defendant's picture. With respect to the issue of premeditation, the trial justice noted that Oliveira and Cournoyer both saw defendant pull out a handgun, cock it, and set out in the direction where Wilson had fled. The trial justice regarded as truthful a similar statement that Muniz made to the police, and he rejected as not truthful Muniz's subse-

quent change of story while testifying at trial. Additionally, the trial justice addressed the issue of premeditation by saying that, based on the entry point of the second bullet as the medical examiner testified to,[7] and the evidence that defendant was armed with a gun while pursuing the victim, he believed the murder to have been "an execution which bespeaks first degree murder." Finally, the trial justice said that "the State produced in my mind credible and substantial evidence that this defendant did, in fact, commit first degree murder and all of the other offenses for which he was charged; that proof was easily to the level of beyond a reasonable doubt. And the jury, in my view, quite properly made the correct decision * * *." To our mind, the trial justice conducted a proper and thorough analysis of the evidence before him. Only after making his own independent assessment did he agree with the jury's verdict and deny the defendant's motion. Because the trial justice agreed with the verdict, his analysis need not have extended beyond that which it did. Because we hold that the trial justice neither misconceived nor overlooked material evidence, nor was he otherwise clearly wrong, we defer to his factual findings and his judgment. For these reasons, we disagree with the defendant's allegations of error. Accordingly, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

---

7. We note that the trial justice's reference to the medical testimony was made in an effort to address the issue of premeditation, insofar as the victim's position on his knees after having been shot once in the abdomen rendered him effectively helpless and at defendant's mercy. The medical testimony was not used for the purpose of addressing the issue of the unlikelihood that defendant could have fired shots to the front of the victim while pursuing him from behind; medical testimony used for this purpose has been waived by defendant for failure to raise the issue in the first instance.