**STATE**

v.

**Donald RAMSEY.**

No. 2002–577–C.A.

Supreme Court of Rhode Island.

March 29, 2004.

Jane McSoley, Esq., Providence, for Plaintiff.

Paul Rosin, Esq., for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

## OPINION

PER CURIAM.

The defendant, Donald Ramsey, appeals from a Superior Court conviction of child molestation, following the denial of his motion to suppress. The case came before the Court for oral argument on March 2, 2004, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we deny the appeal and affirm the conviction.

On July 20, 2000, thirteen-year-old Ashley accompanied defendant, her father's long-time friend and neighbor, on a drive to Burlingame State Park to reserve campsites for an upcoming camping trip that was to include both of their families. Ashley sat in the front seat of defendant's car, while his three-year-old daughter Keanna sat in the back. Ashley testified that approximately five to ten minutes into the trip, after Keanna had fallen asleep in the back seat, defendant unhooked her seat belt, placed his hand under her shorts, and digitally penetrated her. Ashley testified that he did not remove his fingers from her vaginal area until they reached Burlingame.[1] The defendant stopped at the park and went inside a building to purchase the permits while Ashley and the still-sleeping Keanna waited in the car. On the ride home, Ashley testified, defendant once again put his hand down her pants and also took her hand and placed it in his groin area. According to Ashley, defendant removed his hand when he thought he saw a detective drive by.

Before arriving home, defendant stopped at a Cumberland Farms store and gave Ashley $5 to get a snack for herself and Keanna. For the remainder of the ride, Ashley sat in the back seat while Keanna sat in the front. Once she got home, Ashley started crying and told her story to her father, who then reported the incident to the Warwick Police Department.

Later that night, defendant was brought to the police station and placed in an interview room, where Detectives Hopkins

---

1. On cross-examination, however, Ashley recalled that he removed his hand once when he stopped to use an ATM machine.

and Blair questioned him. According to Det. Hopkins, Det. Blair advised defendant of his rights, read a rights form to him, and asked him to read and sign the form.[2] Detective Hopkins testified that, as Det. Blair was questioning the defendant, he appeared calm and did not appear to be under an unusual degree of stress. Detective Blair asked defendant if he did anything that Ashley might have interpreted wrongly, and defendant responded that they were playing a "poking" game in the car and that she got upset on the way home. At this point, Det. Hopkins took over the interview, and his demeanor became accusatory, essentially telling defendant that he thought he was lying. Hopkins pressured defendant about the "poking" game, and defendant told him that he accidentally may have poked Ashley in the breast. At this point, defendant became angry at Det. Hopkins' questions and accusatory nature. Detective Hopkins testified that he did not say or do anything to threaten defendant, but admitted to yelling at defendant and calling him an "f'ing liar." The officer testified that in order to elicit a confession from defendant, his plan was to work defendant up and play the "bad guy" and then have somebody else come in to be the "good guy."

After Det. Hopkins gave defendant a glass of water, he left the interview room, and Det. Blair left shortly thereafter. Because they had not made any progress, Lt. Mark Brandreth entered the interview room and began to talk to defendant. Lieutenant Brandreth testified that he spoke calmly and tried to build a rapport. After questioning defendant, the lieutenant gave him a standard form on which he could write a statement and told defendant to put anything in the statement that he wanted the judge to know about. The defendant testified that while he was writing the statement, Lt. Brandreth repeatedly told him to write that he put his hand in her pants. The defendant refused, but wrote that he "may have touched improperly. But I should remember, and I don't and this is my biggest problem. Ashley is my neighbor's daughter the one I may have touched." The defendant testified that when he wrote this he was referring to the "poking" game. The defendant signed this statement, which was read back to him by Lt. Brandreth.[3]

The defendant subsequently was charged with four counts of first-degree child molestation and one count of second-degree child molestation. On April 22, 2002, the trial court denied defendant's motion to suppress the written statement furnished to the Warwick police, finding that the statement was the product of a voluntary, intelligent, and knowing waiver of his constitutional rights.[4] The matter then proceeded to trial, and defendant's statement was admitted in evidence. At the close of the state's case, the trial justice granted defendant's motion for judgments of acquittal on three of the four first-degree child molestation counts. The jury ultimately returned verdicts of guilty on the remaining count of first-degree child molestation and on the count of sec-

---

2. The defendant testified at the suppression hearing that, although he told the detectives he did not have a problem signing the form, no one read the form to him or went over it with him.

3. Above defendant's signature, in bold letters, the form contains the following statement: "I HAVE MADE THE ABOVE STATEMENT VOLUNTARILY, WITHOUT THREATS OR PROMISES."

4. The trial justice did, however, redact a portion of the statement in which defendant stated that he had been molested as a child and requested the court to provide him with counseling.

ond-degree molestation. The defendant was sentenced to 30 years imprisonment for each conviction, with nine years to serve on the first-degree molestation charge and six years to serve for the second-degree molestation, the sentences to be served concurrently. The trial court then denied defendant's motion for a new trial, concluding that there was evidence in the record to support the jury's finding of guilt beyond a reasonable doubt. The defendant timely filed an appeal of his conviction, asserting that the trial justice erred in denying both his motion to suppress and his motion for a new trial.

On appeal, defendant first argues that he was not advised of, nor did he understand, his constitutional rights when he was interviewed by the Warwick police officers. Further, defendant claims that his statement was involuntarily coerced because he felt threatened during the interview. The defendant argues that the police employed the "good cop—bad cop" routine and verbally intimidated him by accusing him of lying, as well as yelling at him and threatening to physically harm him. The defendant also contends that the police officers refused to allow him to take his medication, which was prescribed for his anxiety and mood disorders.

The state contends that defendant's assertion that he was not advised of his *Miranda* rights must fail because it was not raised at the suppression hearing. The state further argues that defendant's statement was voluntary because at no time during the interview did defendant ask to stop the interview or request that he be provided with a lawyer. The defendant's back talk to the police when they yelled at him, as well as his refusal to include certain admissions in his statement, is also evidence of the voluntary nature of defendant's statement, according to the state. Finally, while acknowledging

that defendant was not allowed to take his medication, the state points to the police department policy, as well as defendant's admission that he knew exactly what he was doing even without the medication.

 "Generally, this [C]ourt will not consider questions that are not properly addressed in the court below." *State v. Smith,* 766 A.2d 913, 919 (R.I.2001) (quoting *State v. Burke,* 522 A.2d 725, 731 (R.I. 1987)). In very limited circumstances, however, this Court will review questions concerning basic constitutional rights. *Id.* Those circumstances are:

"First, the error complained of must consist of more than harmless error. Second, the record must be sufficient to permit a determination of the issue. * * * Third, counsel's failure to raise the issue at trial must be due to the fact that the issue is based upon a novel rule of law of which counsel could not reasonably have known at the time of trial."

*Id.* (quoting *Burke,* 522 A.2d at 731). Whether a confession is involuntary due to the failure to advise a defendant of his or her rights is an issue that must be raised in the court below because it is not novel, but indeed one that has been considered in numerous decisions. *Id.* In the instant case, defense counsel argued at the suppression hearing that defendant's statement was involuntary because it was coerced. Defense counsel, however, did not argue that defendant was not properly advised of the *Miranda* rights, thereby leading to an involuntary confession. Accordingly, this Court will not address the issue of whether defendant was properly advised of his rights.

 The defendant next argues that the motion to suppress should have been granted because his written statement was coerced due to the threats and intimidating tactics of the police officers. In reviewing the denial to suppress a confes-

sion, we first "accord deference to the trial court's factual findings concerning the historical events pertaining to the confession by using a 'clearly erroneous' standard of review." *State v. Carter*, 744 A.2d 839, 845 (R.I.2000) (citing *State v. Page*, 709 A.2d 1042, 1044 (R.I.1998)). With respect to the voluntariness of a statement, we then "review the trial justice's determination on a *de novo* basis because it involves a constitutional issue." *Id.* (citing *Powers v. State*, 734 A.2d 508, 514 (R.I.1999)).

■ A defendant's statement must be the product of his free will and rational choice for it to be a voluntary admission. *Id.* A statement is involuntary if it is the result of "coercion or improper inducement, including threats, violence, or any undue influence that overcomes the free will of the defendant." *State v. Humphrey*, 715 A.2d 1265, 1274 (R.I.1998). In deciding whether a statement is voluntary, we must consider "the totality of the circumstances surrounding the challenged statement." *Carter*, 744 A.2d at 845 (quoting *Humphrey*, 715 A.2d at 1274). The factors this Court may consider are the background, experience and conduct of the accused, as well the level of a suspect's educational attainments. *State v. Garcia*, 643 A.2d 180, 189 (R.I.1994); *State v. Crowhurst*, 470 A.2d 1138, 1142 (R.I.1984).

■ In denying defendant's motion to suppress, the trial justice acknowledged that the officers engaged in certain tactics in an effort to secure a confession from defendant. The court, however, did not find that those tactics deprived defendant of his free will. The trial justice noted that most of the statement was exculpatory, with the exception of defendant's admission that he may have touched Ashley inappropriately, that the statement was lucid, and that defendant described the chain of events intelligently and sequentially. The defendant also had held positions of employment and responsibility that required intelligence and competence; he therefore had the intelligence to make the statement a voluntary product. Based on all the testimony, the trial justice was satisfied that defendant's statement was a knowing waiver of his constitutional rights.

Considering the totality of the circumstances, there is sufficient evidence to conclude that defendant's statement was voluntary. The defendant signed a waiver form, initialed each right as waived, and checked off that he understood his rights. The defendant was not subjected to physical abuse and was provided with water when he asked for it. Although he was not given his medication when requested, it was department policy not to provide medication unless there was an emergency. Further, there is no evidence that defendant was intimidated during the interview, as he admitted that he had talked back to the officers. The defendant also claims that Lieutenant Brandreth pressured him to admit to the allegations while he was writing his statement, but defendant stood his ground and refused to do so. Accordingly, we are unable to conclude that defendant's statement was coerced; therefore, we affirm the trial court's decision to deny defendant's motion to suppress.

■ The defendant's next issue on appeal concerns the denial of his motion for a new trial. The defendant argues that the evidence presented by the prosecution was inherently unbelievable and could not have supported findings of guilt beyond a reasonable doubt. In considering a defendant's motion for a new trial, the "trial justice is required to review all the trial evidence and to exercise his [or her] own independent judgment upon that evidence to determine whether it was sufficient to have enabled the jury to conclude the guilt of the defendant by proof beyond a reason-

able doubt." *State v. Ramirez,* 786 A.2d 368, 372 (R.I.2001) (quoting *State v. Barrett,* 768 A.2d 929, 945–46 (R.I.2001)). In doing so, the trial justice must perform at least three analyses:

"First, he or she must consider the evidence in light of the charge to the jury, a charge that presumably is correct and fair to the defendant. Second, he or she must determine his or her own opinion of the evidence, and then weigh the credibility of the witnesses and other evidence and choose which conflicting testimony and evidence to accept and which to reject. Finally, the trial justice must determine whether he or she would have reached a different result from that of the jury based on an individual assessment and in light of the charge to the jury." *State v. Rivera,* 839 A.2d 497, 502–03 (R.I.2003).

If the trial justice agrees with the jury, "the analysis is complete and the verdict should be affirmed." *Id.* at 503. Further analysis must be made only when the trial justice does not agree with the jury. *Id.* In this analysis, the trial justice "must determine whether the verdict is against the fair preponderance of the evidence and fails to do substantial justice." *Id.* However, "[t]he trial justice need not analyze all the evidence presented, but should state the motivation for his or her ruling." *Id.* (quoting *State v. Henshaw,* 557 A.2d 1204, 1208 (R.I.1989)).

 The decision to deny a defendant's motion for a new trial will be given great deference as long as the "trial justice has articulated a sufficient rationale for his or her decision." *State v. Nunes,* 788 A.2d 460, 464 (R.I.2002) (citing *Barrett,* 768 A.2d at 946). This Court will not disturb the trial court's decision on appeal unless "the trial justice, in making his or her findings, has overlooked or misconceived material trial evidence or was otherwise

clearly wrong." *Rivera,* 839 A.2d at 503 (citing *State v. Vorgvongsa,* 670 A.2d 1250, 1252 (R.I.1996)).

 In the instant case, the trial justice considered the evidence and, while noting certain inconsistencies and discrepancies of the details of Ashley's testimony, determined that her testimony as to the essential fact that the molestation occurred was credible. The trial justice also noted that Ashley had no reason to fabricate her story because there was no evidence of a poor relationship between her and defendant or an argument before the incident. She then noted that in defendant's written statement, he was able to recall every detail of the trip. However, defendant stated that he was troubled by the fact that he could not remember whether or not he had touched Ashley inappropriately. After weighing the credibility of the witnesses, the trial justice agreed with the jury's verdict.

Upon review of the record, it is evident that the trial justice did not err in denying the defendant's motion for a new trial. There is adequate reference to the material trial evidence, and we are satisfied that the trial justice properly exercised her own independent judgment in determining whether the evidence was sufficient to satisfy the state's burden. In doing so, the trial justice neither overlooked nor misconceived material evidence, nor was she clearly wrong.

For the reasons stated, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.