STATE

v.

Abdel Fettah TAOUSSI.

No. 2007–17–M.P.

Supreme Court of Rhode Island.

June 30, 2009.

Lauren S. Zurier, Department of Attorney General, Providence, for Plaintiff.

Marie T. Roebuck, Office of Public Defender, Providence, for Defendant.

Present GOLDBERG, Acting C.J., FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## OPINION

Justice ROBINSON for the Court.

The defendant, Abdel Fettah Taoussi, appears before this Court pursuant to our having granted his petition for writ of certiorari; he alleges that the trial justice at his criminal trial committed reversible error in denying his motion to suppress certain statements that he made to the

police.[1]  The defendant stands convicted of one count of second-degree child molestation sexual assault and one count of second-degree sexual assault.

This case came before the Supreme Court on April 6, 2009, pursuant to an order directing the parties to appear and show cause why the issues raised in the petition for certiorari should not be summarily decided.  After examining the written and oral submissions of the parties, we are of the opinion that the issues raised by defendant in said petition may be resolved without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of conviction.

# I

## Facts and Travel

The defendant was charged with five counts of sexual assault.  The first two counts involved alleged sexual contact with a minor under the age of fourteen.  The next two counts involved alleged sexual contact with another minor who was also under the age of fourteen.  These first four counts involved alleged violations of G.L.1956 § 11–37–8.3.[2]  The fifth count involved alleged sexual contact with an adult in violation of § 11–37–4.[3]

A trial was held from May 8 to May 11, 2006.  After the jury was impaneled, defendant moved to suppress certain statements that he had made to the police when he was first questioned.  On May 8 and 9, 2006, a hearing was held on defendant's motion to suppress, at the conclusion of which hearing the motion was denied.[4]  That denial is the subject of defendant's petition for writ of certiorari.

At the hearing on defendant's motion to suppress, the testimony of defendant and an arresting officer differed in numerous respects.  Detective Michael Miguel of the Tiverton Police Department testified at the hearing.  He testified that on August 3, 2005 he received a phone call from a member of the Portsmouth Police Department, Detective Sergeant Harry Leonard, who was investigating a complaint of possible second-degree child molestation by defendant.  Detective Miguel testified that Detective Sergeant Leonard told him that

---

1.  After defendant's sentencing hearing on July 7, 2006, defendant waived his right to an appeal.  In his petition for writ of certiorari and accompanying sworn affidavit, defendant asserted that, although he was informed of his right to appeal at his sentencing hearing, he was not advised that if he could not afford an attorney one would be appointed for him.  Our review of the sentencing hearing transcript confirms defendant's assertion.

2.  General Laws 1956 § 11–37–8.3 provides as follows: "A person is guilty of a second degree child molestation sexual assault if he or she engages in sexual contact with another person fourteen (14) years of age or younger."

3.  The adult complaining witness testified at defendant's trial that she was asleep when defendant sexually assaulted her.  The defendant was charged pursuant to § 11–37–4 which provides in pertinent part as follows:
"A person is guilty of a second degree sexual assault if he or she engages in sexual

contact with another person and if any of the following circumstances exist:
"(1) The accused knows or has reason to know that the victim is * * * physically helpless."

4.  After the hearing on the motion to suppress and the denial of same, the actual trial commenced—at the conclusion of which defendant was convicted of two of the five counts with which he had been charged; he was found guilty of one count of second-degree child molestation sexual assault and one count of second-degree sexual assault.  The jury found him not guilty with respect to two counts of second-degree child molestation sexual assault; and, at the close of all the evidence, the trial justice dismissed a third count pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure because of insufficiency of evidence.

there might be similar allegations about conduct that had taken place in Tiverton, and he asked him to come to the Portsmouth police station.

Detective Miguel further testified that he in fact did go to the Portsmouth police station, where he met with the two minor complainants, as well as their mother. He testified that he spoke with both complainants and that they related to him separate incidents in which defendant had inappropriately touched and kissed them. Based upon this information, the Portsmouth police obtained an arrest warrant for defendant.

Detective Miguel further testified that, later on the same day, he went with Detective Sergeant Michael Carr of the Tiverton Police Department and Detective Sergeant Leonard of the Portsmouth Police Department to defendant's home in Tiverton and arrested him. Detective Miguel testified that Detective Sergeant Carr read the *Miranda*[5] rights to defendant, who indicated that he understood his rights. He testified that defendant was then taken to the Tiverton police station and was placed in an interview room with the three police officers.

Detective Miguel testified that, in the interview room, he presented defendant with a printed *Miranda* rights form and read it to him. He testified that he asked defendant whether he understood the form and that defendant replied that he did. Detective Miguel further testified that he then asked defendant to read the form to himself and to initial each of the specific *Miranda* warnings, and he stated that defendant did so. Detective Miguel testified that defendant, after having been informed of his rights, agreed to give a statement and did not request an attorney. Detective Miguel stated that defendant initially denied the allegations, but that, after further questioning, he became upset and started to cry. Detective Miguel testified that defendant asked him whether he needed an attorney, and the detective told him that he could not give him such advice and that it was entirely his decision. Detective Miguel stated that defendant remained silent after this conversation and did not request an attorney.

Detective Miguel testified that he then told defendant what the specific allegations were, and defendant admitted that he had touched one of the minor complainants and had "rubbed her butt [and] kissed her all over." The detective testified that, when he started to ask defendant about the incident with the other minor complainant in Tiverton, defendant became more upset and asked to speak to Detective Miguel alone.

Detective Miguel testified that, once Detective Sergeant Leonard and Detective Sergeant Carr left the interview room, defendant told Detective Miguel several times that he was sick and that he needed help. Detective Miguel testified that defendant then told him about an incident involving the other minor complainant which had occurred in Tiverton. The detective testified that defendant told him that he had been in a bathroom with the minor and that he touched her and kissed her all over. The detective testified that he asked defendant how many times he had inappropriately touched the minor complainants; he said that defendant responded that he had done so between four or five times over the course of a couple of years. Detective Miguel testified that defendant denied any type of sexual penetration with respect to either of the minor complainants.

**5.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Detective Miguel also testified that Detective Sergeant Leonard asked defendant to write out his statement on a preprinted statement form. Detective Miguel testified that defendant wrote out a short paragraph, which did not mention everything that he had just revealed to the detective. Detective Miguel testified that he asked defendant about the omissions and that defendant said that he was too tired or upset to write anymore.

On cross-examination, Detective Miguel testified that he did not recall whether or not defendant was wearing glasses when he was in police custody. Also on cross-examination, Detective Miguel testified that the police officers did not take any written notes while defendant was in the interrogation room. He further testified that, although the station did have the ability to audio-record statements, the police did not in fact audio-record defendant's interview.

The defendant testified somewhat differently with respect to the circumstances surrounding his arrest. He testified that three police officers arrested him at his home on August 3, 2005. He testified that he was not read his *Miranda* rights at his house and was not told why he was being arrested. He stated that he was placed in handcuffs and driven to the police station, where he was questioned in a small room.

The defendant testified that, when the police officers told him that there was an accusation against him involving a minor, he was shocked and did not know what to say. He testified that he asked for a lawyer, using the word "counsel," but that no one responded to his request. He further testified that he was not advised of his rights or shown any documents before he was questioned.

The defendant testified that, after approximately forty-five minutes of questioning, the officers left the room for a few minutes; he stated that, when they returned, Detective Miguel started pointing his finger at him and calling him a liar. He testified that one of the officers then handed him a piece of paper that he could not read because he was not wearing his reading glasses. The defendant stated that he uses reading glasses, but that he did not have them with him at the police station. The defendant further testified that, when he told the officers he could not read the form without his glasses, Detective Miguel read the first paragraph of the form to him; defendant stated that he then initialed the form where Detective Miguel pointed. He testified that, after he initialed the form, he again asked for a lawyer. He further testified that he signed the form only because the police officers told him that he would lose his family if he refused.

The defendant testified that the officers next gave him another piece of paper and told him to write that he had touched one of the minor complainants inappropriately. He stated that he merely wrote what the police officers told him to write and that, after writing one paragraph, he refused to write more. He testified that the police offered to type a statement for him to sign; he stated that he refused to sign anything because the officers were accusing him of something that he did not do. The defendant testified, that after he refused to continue writing the statement, he again asked for a lawyer. He further testified that, when he wrote the word "counseling" on his statement, he was asking for a lawyer and that he makes a lot of mistakes in English since it is not his first language.

At the end of the suppression hearing, the trial justice found that, based upon the totality of the evidence and testimony presented, the state had established by clear and convincing evidence that the police had repeatedly advised defendant of his

*Miranda* rights, that he understood those rights, and that he had voluntarily waived those rights. Accordingly, the trial justice denied defendant's motion to suppress.[6]

The defendant's trial continued; on May 11, 2006, the jury returned a verdict of guilty with respect to one count of second-degree child molestation sexual assault and one count of second-degree sexual assault.[7] On July 7, 2006, defendant received concurrent sentences of (1) twenty years, with six years to serve and fourteen years suspended with probation on the second-degree child molestation sexual assault conviction and (2) fifteen years, with six years to serve and nine years suspended, with probation on the second-degree sexual assault conviction.

The defendant filed a petition for a writ of certiorari on January 12, 2007, and this Court granted that petition on March 22 of that year.

The defendant challenges only the denial of his motion to suppress. He contends that the state failed to prove that his interrogation was legally conducted and also failed to prove that he did not invoke his right to counsel. The defendant further contends that the prosecution failed to meet its burden of proving by clear and convincing evidence that he knowingly and intelligently waived his *Miranda* rights and voluntarily made statements to the police.

## II

### Analysis

■ When ruling on a motion to suppress, "a trial justice can admit a confession or a statement against a defendant only if the state can first prove by clear and convincing evidence that the defendant knowingly, intelligently, and voluntarily waived his or her constitutional rights expressed in *Miranda v. Arizona,*" *State v. Bido,* 941 A.2d 822, 835 (R.I.2008) (internal quotation marks and brackets omitted); *see also State v. Dennis,* 893 A.2d 250, 261 (R.I.2006); *State v. Dumas,* 750 A.2d 420, 423 (R.I.2000).

When we review a trial justice's decision on a motion to suppress a statement that is alleged to have been made involuntarily, we employ a two-step analysis. *See, e.g., Bido,* 941 A.2d at 835. We describe those two steps in the next two paragraphs.

The first step requires us to review the trial justice's findings with respect to the historical facts relevant to the voluntariness of the confession. *Id.; see also State v. Perez,* 882 A.2d 574, 588 (R.I.2005). This Court will not overturn findings concerning historical facts relevant to the voluntariness of a confession unless they are clearly erroneous. *Bido,* 941 A.2d at 835; *see also Dennis,* 893 A.2d at 261. With respect to such findings, this Court has held that "[a] finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the basis of the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Perez,* 882 A.2d at 588; *see also Bido,* 941 A.2d at 835–36. We also recognize the general principle that the trier of fact "is in the best position to assess the relative credibility of witnesses." *Bido,* 941 A.2d at 836.

If we accept the trial justice's findings of historical fact, we then proceed to the sec-

---

6. On May 19, 2006, the trial justice entered a formal order denying the motion to suppress and setting forth his reasons more fully.

7. It will be recalled that at the close of all the evidence at the trial, the trial justice dismissed one count of second-degree child molestation sexual assault. The jury returned a verdict of not guilty on the two remaining counts of second-degree child molestation sexual assault.

ond step of the analysis, in which it becomes our duty to "apply those historical facts and review *de novo* the trial justice's determination of the voluntariness of the statement." *Bido*, 941 A.2d at 836; *see also Dennis*, 893 A.2d at 261 ("[T]he ultimate question of whether a confession was given voluntarily is legal in nature, and this Court undertakes a *de novo* review of questions of law and mixed questions of law and fact insofar as those issues involve constitutional issues.") (internal quotation marks omitted); *State v. Humphrey*, 715 A.2d 1265, 1273 (R.I.1998). This Court has held that "[a] defendant's statement is voluntary when it is the product of [the defendant's] free and rational choice." *Id.* at 1274 (internal quotation marks omitted). This Court had held that a defendant's statement is involuntary "if it is extracted from the defendant by coercion or improper inducement, including threats, violence, or any undue influence that overcomes the free will of the defendant." *Id.; see also Bido*, 941 A.2d at 836. When called upon to determine whether or not a statement was voluntary, this Court looks at "the totality of the circumstances surrounding the challenged statement." *Humphrey*, 715 A.2d at 1274; *see also State v. Ramsey*, 844 A.2d 715, 720 (R.I.2004). Among the factors the Court may consider in making this determination are the suspect's background, experience, conduct, and educational achievements. *Ramsey*, 844 A.2d at 720.

In denying defendant's motion to suppress, the trial justice thoroughly reviewed the testimony of Detective Miguel and defendant. He found defendant to be "a highly educated, cultured, and sophisticated individual of approximately forty-six years of age." Although English is not defendant's first language, the trial justice found that "he is not only intelligent but highly articulate in the spoken English language." The trial justice also found that defendant was not a credible witness and that, by contrast, Detective Miguel was both reasonable and highly credible.

■ The trial justice found no credible evidence that the police used threats, promises, or improper interrogation techniques. He noted that defendant had asked Detective Miguel whether or not he needed an attorney, but the trial justice then explained that such a question "is not the same thing as invoking his right to have counsel present." Rather, in the words of the trial justice, it was "merely a request for advice and did not constitute an unambiguous, unequivocal invocation of the right to counsel." In our view, the trial justice was correct in so categorizing defendant's question.

After making the above-summarized observations, the trial justice found that defendant made a voluntary decision to waive his *Miranda* rights and provide statements to the police officers from Tiverton and Portsmouth.

After carefully reviewing the record and bearing in mind the deference that this Court gives to the trial justice's findings of historical fact, we cannot say that the trial justice's findings were clearly erroneous. The trial justice was in the best position to determine the credibility of the witnesses, and he found that Detective Miguel was a highly credible witness while also finding that defendant was not. Accordingly, we accept the trial justice's findings of historical fact, and we now proceed to the second step of our analysis—that being a *de novo* review of the trial justice's determination as to the voluntariness of Mr. Taoussi's statements.

Considering the totality of the circumstances, there is sufficient evidence in the record to satisfy us that the defendant's oral and written statements to the police were voluntary. The defendant speaks several languages and is articulate in En-

glish. He is a college graduate who, at the time of his arrest, held a supervisory position with a national hotel chain. He was properly advised of his *Miranda* rights several times, signed a waiver form, and initialed each right on that form. There was no evidence that the defendant was subjected to coercion. Although the defendant stated that he felt pressured to give a statement, there is no credible evidence that the defendant was intimidated during the interview. In fact, the defendant was able to exercise his will when he opted to stop writing his statement after completing just one paragraph. On the basis of the entire record, we are unable to conclude that the defendant's statement was coerced. Accordingly, having conducted the requisite *de novo* review, we find ourselves in agreement with the trial justice that the defendant's statements were voluntary.

### Conclusion

For the reasons stated in this opinion, the writ heretofore issued is quashed, and we affirm the judgment of conviction. The papers in this case may be remanded to the Superior Court.