December 20, 2021

**Supreme Court**

No. 2019-408-C.A.
(P2/18-785AG)

State                    :

v.                    :

Robert Rego.                    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State           :

v.            :

Robert Rego.     :

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.**  The defendant, Robert Rego, appeals from a judgment of conviction rendered after a jury trial in Providence County Superior Court on the following counts: Count One, discharging a firearm while committing a crime of violence, in violation of G.L. 1956 § 11-47-3.2(b)(1); Count Two, discharging a firearm from a motor vehicle in a manner which created a substantial risk of death or serious injury, in violation of § 11-47-61; Count Three, carrying a firearm without a license, in violation of § 11-47-8(a); Count Four, assault with a dangerous weapon, in violation of G.L. 1956 § 11-5-2(a); and Count Five, discharging a firearm in a compact area, in violation of § 11-47-50.[1]  These charges

---

[1]    The jury returned guilty verdicts on Counts One, Three, and Four.  The defendant was acquitted on Count Two; and Count Five was dismissed by the state pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure.

all stemmed from a shooting incident that occurred in Central Falls, Rhode Island, on January 3, 2017.

On appeal, defendant argues that the trial justice erred in denying his motion for a new trial because, in his view, the trial justice overlooked a key piece of evidence and mistakenly credited certain witness testimony. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

## Facts and Travel

A jury trial in the instant case commenced on May 21, 2019 and continued over the course of four days, culminating on May 24, 2019. We relate below the salient aspects of the testimony adduced at trial.

## A

## The Testimony of Armande Moore

Armande Moore, the complaining witness, testified that, on the evening preceding the early-morning shooting in question, he received a phone call from a close family friend, Bryan Palmer, in which Mr. Palmer stated that he (Mr. Palmer) had received a threatening phone call from defendant. Mr. Moore explained that he did not know exactly what the issue was between defendant and Mr. Palmer, but that defendant had threatened Mr. Palmer's family with either a "drive-by shoot[ing]" or some other action to "get at them." Mr. Moore went on to testify that, like Mr.

Palmer, he also had a contentious past with defendant and that, on a prior occasion, he also had been threatened by him.[2]

## 1. The First Encounter

Mr. Moore further testified that, on January 3, 2017, he left work at around 12:30 a.m. and went directly to the home of Meaghan Fontaine, where he remained for approximately an hour to an hour and a half. Mr. Moore then testified that, at around 2:00 a.m., he and Ms. Fontaine went to Samantha Brayall's residence on Samoset Avenue in Central Falls to discuss the threatening phone call from defendant to Mr. Palmer.[3] Mr. Moore explained that, when he arrived at the home of Ms. Brayall, he observed both Ms. Brayall and defendant parked outside of her home in defendant's vehicle, a dark-colored Ford Explorer. Mr. Moore stated that,

---

[2] Mr. Moore testified that at least some of the friction between defendant and him arose out of a separate incident involving Samantha Brayall. Mr. Moore stated that he had been in a prior romantic relationship with Ms. Brayall for approximately four years and that, towards the tail-end of that relationship, Ms. Brayall became romantically involved with defendant. However, he further testified that, although there had previously been friction between defendant and him with respect to Ms. Brayall, by the time of the shooting, he had decided to let "bygones be bygones."

[3] Mr. Moore testified that Ms. Fontaine is a friend of his and that she remained in the passenger's seat of his vehicle while the shooting at issue was taking place. Although it can be inferred from the record that Ms. Fontaine most likely witnessed the shooting, the Central Falls police were unable to locate her or obtain a statement from her regarding the events of January 3, 2017.

although the street was not well lit, with his high beams on he could see defendant positioned in the driver's seat and Ms. Brayall sitting in the passenger's seat.

Mr. Moore further testified that he proceeded to park his own vehicle, and then approached defendant's vehicle, while banging on the vehicle's window and shouting. He went on to testify that, although he urged defendant to get out of his vehicle, defendant instead drove South on Samoset Avenue and then turned right onto Hunt Street. Mr. Moore stated that, when defendant drove away, defendant was in the driver's seat and Ms. Brayall was still in the passenger's seat. Mr. Moore testified that, after defendant drove away, he returned to his own vehicle, drove North, turned left onto River Street, and then turned left onto High Street.[4] He added that he believed at the time that, based on where defendant had stopped his vehicle on Hunt Street, defendant was dropping Ms. Brayall off at her new residence.[5]

---

[4]     To assist the reader in visualizing the area in Central Falls where the events described in this opinion took place, we note that the record indicates that Samoset Avenue and High Street run parallel to each other in a North-South direction. Both streets run perpendicular to Hunt Street on their Southern end. Finally, River Street runs parallel to Hunt Street on the Northern end of Samoset Avenue and High Street. All four streets together form a small block at the Northeast end of Central Falls.

[5]     Mr. Moore testified that, on January 3, 2017, Ms. Brayall was in the process of moving from her residence on Samoset Avenue to a new residence on Hunt Street, which street intersects Samoset Avenue.

## 2. The Second Encounter

Mr. Moore testified that he parked his vehicle near the intersection of Hunt Street and High Street, exited the vehicle, and proceeded towards where defendant had stopped on Hunt Street.[6] He further stated that he was aware that defendant "always carried" a firearm "for protection;" and he added that, out of fear for his own safety, he picked up a brick from a vacant lot to use in self-defense if necessary. Mr. Moore testified that, shortly after he retrieved the brick, defendant's vehicle approached the intersection of Hunt Street and High Street and stopped. Mr. Moore further stated that, as he continued on foot towards defendant's vehicle, he saw a flash and heard a "pop sound" coming from defendant's direction; he added that at that point he felt something hit his leg. He further stated that, in response to the "loud bang" which he had just heard, he threw the brick at defendant's vehicle.

Mr. Moore testified that, as he ran back to his own vehicle, he heard five or six more shots coming from the direction of defendant's vehicle. He further stated that, during this second encounter, the driver's side of defendant's vehicle was not visible from his line of sight. Mr. Moore further indicated that, once back in his own vehicle, he "sped off," passing by the passenger's side of defendant's vehicle. He

---

[6] Mr. Moore initially stated in his interview with Detective Craig Viens on January 3, 2017 that approximately five to fifteen minutes had passed between the first encounter and the second encounter at the intersection. However, at trial Mr. Moore testified that only a "few seconds" had passed between the two encounters.

explained that, although the lighting at the intersection was not good, he did not see anyone seated in the passenger's seat of defendant's vehicle, nor did he see any other person or any other vehicles in the general area. Mr. Moore also testified that, even though he could not actually see defendant's face during the altercation, he did see "a figure, like a shadow" in defendant's vehicle as it drove away.

### 3. The Aftermath

It was further Mr. Moore's testimony that, immediately after the just-described shooting incident, he returned to Ms. Fontaine's home, where he realized that he had been shot in the leg. He added that, later on that same morning, he sought treatment at Miriam Hospital, where he spoke with Officer David Hemond of the Central Falls Police Department and gave a statement as to what had occurred. Mr. Moore further testified that, after he was released from the hospital, he went to the Central Falls Police Station, where he was interviewed by Detective Craig Viens regarding the events at issue.[7] Mr. Moore acknowledged on cross-examination that, during his interview with Detective Viens, he had stated that he was "100%" sure that Ms. Brayall was also in defendant's vehicle during the second encounter, which degree of certainty was inconsistent with his testimony at trial (which was to the effect that Mr. Moore could see only one shadowy figure in defendant's vehicle

---

[7] By the time of trial, Detective Viens had attained the rank of Sergeant.

during the shooting incident). Mr. Moore also testified that, during the interview with Detective Viens, he had stated that he did not believe that Ms. Brayall was responsible for the shooting in view of certain physical limitations that he believed would prevent her from properly operating a gun.

**B**

**The Testimony of Officer Yomaira Rodriguez**

Yomaira Rodriguez testified that, on the morning of January 3, 2017, she was on duty as a Central Falls police officer and that, at approximately 2:11 a.m., she was called to the area of High Street by Officer Hemond, who said that he had heard gunshots and glass breaking. Officer Rodriguez testified that, while driving on High Street in response to the call, she observed a dark-colored Ford Explorer traveling in the opposite direction. She added that, as she passed the vehicle, she was able to observe the driver as being "a light-skinned male, approximately in the ages of 25 to 35," with "dark colored" hair. Officer Rodriguez added that, while her "focus was primarily on the driver," she did have a clear view of the passenger's seat and did not see anyone sitting there. She stated that she was later able to identify defendant as the driver of the Ford Explorer.

## C

### **The Verdict, the Motion for a New Trial, and the Sentencing**

On May 24, 2019, the jury returned a verdict finding defendant guilty on Counts One, Three, and Four. He was acquitted on Count Two, and the state dismissed Count Five pursuant to Rule 48(a) of the Superior Court Rules of Criminal Procedure. The defendant was sentenced as follows: on Count One, twenty years—with twelve years to serve and eight years suspended, with probation and ineligibility for parole; on Count Three, ten years suspended, with probation; and on Count Four, eight years to serve. The sentence on Count One is to run consecutively to the sentence imposed on Count Four, while the sentence on Count Three is to run concurrently with the sentence on Count Four.

The defendant's motion for a new trial was heard on June 6, 2019, and a bench decision denying the motion was rendered on that same day. A timely notice of appeal was filed.

## II

### **Standard of Review**

In assessing a motion for a new trial which contends that the weight of the evidence was insufficient to support a conviction, "the trial justice acts as a thirteenth juror and exercises independent judgment on the credibility of witnesses and on the weight of the evidence." *State v. Greenslit*, 135 A.3d 1192, 1197 (R.I. 2016)

(internal quotation marks omitted); *see also State v. DiCarlo*, 987 A.2d 867, 870 (R.I. 2010). The trial justice is charged with employing a three-step analysis in determining whether or not a new trial should be granted. *Greenslit*, 135 A.3d at 1197; *see also State v. Hie*, 93 A.3d 963, 974 (R.I. 2014). It is the duty of the trial justice to "(1) consider the evidence in light of the jury charge, (2) independently assess the credibility of the witnesses and the weight of the evidence, and then (3) determine whether he or she would have reached a result different from that reached by the jury." *State v. Gonzalez*, 56 A.3d 96, 102 (R.I. 2012) (internal quotation marks omitted). If the trial justice, after completing the three-step analysis, "agrees with the jury's verdict or if the evidence is such that reasonable minds could differ as to the outcome, the motion for a new trial should be denied." *Greenslit*, 135 A.3d at 1197 (quoting *Gonzalez*, 56 A.3d at 102).[8]

This Court has indicated that the trial justice should include a brief explanation of his or her reasoning relative to each analytical step. *Gonzalez*, 56 A.3d at 102; *see DiCarlo*, 987 A.2d at 870. In explaining his or her reasoning, the trial justice "need not refer to all the evidence supporting the decision but need only cite evidence sufficient to allow this [C]ourt to discern whether the justice has applied

---

[8] In view of the trial justice's ruling in this case denying the motion for a new trial, we need not summarize the fourth analytical step that should be undertaken when a trial justice "does not agree with the jury's verdict or does not agree that reasonable minds could differ as to the proper disposition of the case * * *." *State v. Greenslit*, 135 A.3d 1192, 1197 (R.I. 2016).

the appropriate standards." *Gonzalez*, 56 A.3d at 102 (internal quotation marks omitted); *see DiCarlo*, 987 A.2d at 870.

On appeal, this Court accords deference to the trial justice's decision if he or she has "articulated adequate reasons for denying the motion * * *." *State v. Garrett*, 91 A.3d 793, 800 (R.I. 2014) (internal quotation marks omitted); *see also State v. Paola*, 59 A.3d 99, 104 (R.I. 2013). The trial justice, having been present during the entirety of the trial, has had ample opportunity to observe witnesses, assess credibility, and account for "other realities that cannot be grasped from a reading of a cold record." *Greenslit*, 135 A.3d at 1198 (internal quotation marks omitted); *see Garrett*, 91 A.3d at 801; *see also Paola*, 59 A.3d at 106. This Court is deferential to the trial justice's factual determinations and credibility assessments because the trial justice, as compared with those who conduct appellate review, "is in an especially good position to evaluate the facts and to judge the credibility of the witnesses." *Greenslit*, 135 A.3d at 1198 (internal quotation marks omitted); *see DiCarlo*, 987 A.2d at 871 n.7. Accordingly, the trial justice's decision will be "left undisturbed unless [he or she] overlooked or misconceived material evidence or otherwise was clearly wrong." *Greenslit*, 135 A.3d at 1198 (quoting *Garrett*, 91 A.3d at 800); *see Hie*, 93 A.3d at 975.

# III

# Analysis

On appeal, defendant avers that the trial justice erred by overlooking material evidence which he claims provided another person with an "equal opportunity" to commit the charged offenses. Specifically, he contends that the trial justice ignored Mr. Moore's initial statement to Detective Viens that he was "100%" sure that Ms. Brayall was in the vehicle with defendant at the time of the second encounter.[9] The defendant further argues that the short interval between the two encounters described by Mr. Moore at trial was not long enough for Ms. Brayall to be able to exit the vehicle, "bid [defendant] good-night[,] and make her way inside" her residence on Hunt Street. He contends that, instead, Ms. Brayall actually remained in the vehicle during the second encounter. Accordingly, defendant contends that it is "equally likely" that Ms. Brayall, rather than defendant, could have been the one to fire at Mr. Moore and that the trial justice erred by failing to take this possibility into account when passing upon the motion for a new trial.

---

[9]     On appeal, defendant points to various other inconsistencies between Mr. Moore's statement of January 3, 2017 and his testimony at trial. While we acknowledge that there are some minor differences between Mr. Moore's interview and his testimony at trial, we note that the existence of those minor differences had no effect on our decision in this case. *See State v. Jensen*, 40 A.3d 771, 781 (R.I. 2012) ("We have also on more than one occasion acknowledged that the presence of some inconsistencies between or among utterances of a witness or witnesses at different points in time does not *ipso facto* render the testimony unworthy of belief.").

It is also defendant's position that the trial justice "misconstrued and overestimated the importance" of Mr. Moore's testimony, arguing that Mr. Moore was "unreliable" and "bore a significant grudge against [defendant]." The defendant contends that Mr. Moore's testimony was obviously biased given his "avowed dislike" for defendant and that he "attempted to malign [defendant]'s character on the witness stand" by fashioning his testimony so as to incriminate defendant. For these reasons, defendant avers that the trial justice inappropriately credited Mr. Moore's testimony.[10]

## A

## The Trial Justice's Analysis

It is clear from the record that the trial justice conducted the appropriate three-step analysis when passing upon the motion for a new trial, which analytical framework he specifically referenced at the outset of the hearing. First, the trial justice considered the evidence presented at trial in light of the jury charge. He began by noting that Mr. Moore went to Ms. Brayall's residence to confront defendant about the threatening phone call to Mr. Palmer, and he also referred to the

---

[10] On appeal, defendant raises two other arguments—namely, (1) that Mr. Moore was not qualified to opine on Ms. Brayall's apparent inability to handle a firearm or the extent of her physical condition; and (2) that the state failed to articulate a strong motive behind defendant's alleged actions. After due consideration, neither argument has caused us to reach a different conclusion in this case from the one that we have reached.

- 12 -

first encounter, which took place when Mr. Moore angrily approached defendant's vehicle. The trial justice also noted that, after the first encounter, Mr. Moore watched defendant drive around the block and then stop in front of Ms. Brayall's new residence. The trial justice also alluded to the fact that Mr. Moore then drove around the block in the opposite direction, parked his vehicle, exited, and confronted defendant again, at which time gunshots rang out. Continuing with his review of the evidence, the trial justice then noted that Mr. Moore threw a brick at defendant's vehicle and that Mr. Moore was hit by one of the gunshots. The trial justice went on to note that, shortly after the second encounter, Officer Rodriguez saw defendant's vehicle leaving the scene and was later able to identify defendant as the driver. Ultimately, the trial justice concluded that "the circumstantial evidence is overwhelmingly persuasive that it must have been [defendant]" who shot Mr. Moore.

Next, the trial justice went on to assess Mr. Moore's credibility and the weight of the evidence. He stated:

> "I fully credit [Mr.] Moore's testimony that only [defendant] and [Ms. Brayall] were in the car at the outset, and that *only one person was in the SUV later when he was shot*. That person was unquestionably [d]efendant * * *, and I reject out of hand any suggestion that [Mr.] Moore prevaricated in order to inculpate [defendant] or was somehow mistaken in believing [defendant] was in the SUV." (Emphasis added.)

The trial justice further commented that, if Mr. Moore wanted or intended to fashion his testimony in such a way as to incriminate defendant, he could have done so by simply stating that he "actually saw [defendant] shoot," which he did not do. The trial justice found that that fact "enhanced, not diminished" Mr. Moore's credibility.[11]

With respect to the third step of the required analysis, the trial justice concluded that he "agree[d] entirely" with the jury's verdict. In denying defendant's motion for a new trial, the trial justice found that the verdict was "proper" and that he agreed that the "jury had more than ample evidence to convict * * * defendant beyond a reasonable doubt * * *." *See State v. Imbruglia*, 913 A.2d 1022, 1028 (R.I. 2007) ("If the trial justice concludes that he or she would have reached the same result as the jury did or that reasonable minds could differ as to the result, the motion for a new trial must be denied."). Accordingly, we perceive no error in the trial

---

[11] The defendant also alleges that the trial justice erred in finding credible the testimony of Mr. Palmer, who stated that he had previously heard defendant brag about owning a firearm and that the two also had a less than amicable relationship. The defendant also contends that, because of the animosity which Mr. Palmer bore him, Mr. Palmer also sought to shape his testimony to incriminate defendant.

Although Mr. Palmer's testimony is mentioned by defendant on appeal, the trial justice did not undertake an assessment of Mr. Palmer's credibility in his review. However, because Mr. Moore was the only witness to recount what transpired between defendant and him on January 3, 2017, the absence of such an assessment has no bearing on our decision.

justice's application of the required three-step analysis. *See Greenslit*, 135 A.3d at 1200.

## B

## The Defendant's Arguments on Appeal

The defendant contends that the trial justice overlooked and thereby did not afford adequate weight to Mr. Moore's initial statement to Detective Viens that he was "100%" sure that Ms. Brayall was in defendant's vehicle during the second encounter. Although not specifically referenced in the trial justice's ruling, we are satisfied that, by fully crediting Mr. Moore's trial testimony to the effect that there was only one silhouette in defendant's vehicle during the second encounter, the trial justice's analysis adequately took into account the inconsistency between Mr. Moore's initial statement and his testimony at trial. This Court has repeatedly held that "[t]he mere fact that [a] defendant disagrees with the trial justice's conclusions about credibility is not a sufficient basis to warrant the granting of a motion for new trial." *Gonzalez*, 56 A.3d at 103 (internal quotation marks omitted); *see also State v. Muralles*, 154 A.3d 925, 934 (R.I. 2017). Moreover, we remain mindful of the principle that, because the trial justice has "the benefit of first-hand observation," his determination is accorded significant weight. *Gonzalez*, 56 A.3d at 104; *see Jensen*, 40 A.3d at 780-81; *see also State v. Adefusika*, 989 A.2d 467, 476 (R.I. 2010). Consequently, we are unable to perceive any error on the part of the trial

- 15 -

justice when he accorded Mr. Moore's initial statement to Detective Viens less weight than his testimony at trial.

It is also defendant's contention that the trial justice did not place enough weight on the fact that the period of time between the two encounters was not long enough for Ms. Brayall to exit defendant's vehicle. The defendant argues that, in view of that brief time span, Ms. Brayall must have remained in defendant's vehicle during the second encounter, making it "equally likely" that she, rather than defendant, was the shooter. The defendant's argument is unavailing because, although there was a limited amount of time between the two encounters, Ms. Brayall had the opportunity to exit defendant's vehicle before the second encounter. As such, it was entirely reasonable for the trial justice to conclude that the jury could have determined that there was only one person in defendant's vehicle during the second encounter—and that that person was defendant.

After a review of the entire record, we perceive no error on the part of the trial justice in weighing the evidence or judging the credibility of Mr. Moore. Accordingly, it is clear to us that the trial justice did not overlook or misconceive material evidence in denying the defendant's motion for a new trial.

## IV

## Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.  The record may be returned to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Robert Rego. |
| **Case Number** | No. 2019-408-C.A. (P2/18-785AG) |
| **Date Opinion Filed** | December 20, 2021 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Mariana Ormonde<br>Department of the Attorney General<br>For Defendant:<br><br>Angela M. Yingling<br>Office of the Public Defender |

SU-CMS-02A (revised June 2020)